**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| **ATRIUS DEVELOPMENT GROUP CORPORATION, INC.,** | § | |
| | § | **Civil Action No. 7:26-cv-00057** |
| **Plaintiff,** | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| **ABC IP, LLC, and RARE BREED TRIGGERS, INC.** | § | |
| | § | |
| **Defendants.** | | |

**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

Atrius Development Group Corporation, Inc. ("Atrius"), by and through the undersigned counsel, for its Original Complaint against ABC IP, LLC ("ABC") and Rare Breed Triggers, Inc. ("RBT") (collectively "Defendants"), hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an action for a declaratory judgment of non-infringement, invalidity, and unenforceability of United States Patent Nos. 12,031,784 ("the '784 patent") and 12,038,247 ("the '247 patent") (collectively, "the Asserted Patents") arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, including Title 35, United States Code.

2. This action arises from Defendants' ongoing efforts to unlawfully disrupt Atrius' relationships with its valued customers by aggressively and repeatedly asserting unfounded claims of patent infringement through lawsuits against Atrius's resellers (but not Atrius) targeting an Atrius product known as the "Atrius Forced Reset Selector" ("the Selektor"). Defendants are currently engaged in a campaign of intimidation directed at manufacturers, distributors, and

resellers of firearm components compatible with forced reset trigger ("FRT") mechanisms for AR-15 pattern firearms.

3. On September 5, 2023, a district court in the Eastern District of New York granted the Department of Justice's motion for a preliminary injunction, enjoining Defendants and their principles from selling FRT triggers, which the court found were likely illegal "machineguns" under 26 U.S.C. § 5845(b).

4. On July 24, 2024, however, in a different lawsuit brought by a non-profit gun rights organization challenging the Bureau of Alcohol, Tobacco, Firearms and Explosive's ("ATF") classification of FRTs as "machineguns," a district court in the Northern District of Texas (Fort Worth Division) entered a final judgment declaring unlawful that classification. *National Association for Gun Rights, Inc. v. Garland*, 4:23-cv-830 (N.D. Tex.), ECF 101.

5. On February 7, 2025, President Trump signed Executive Order 14206 which ordered the Attorney General ("AG") to, within 30 days, examine all actions of executive departments and agencies and the ATF's rules promulgated in the prior four years to determine whether any actions or rules are impinging upon the Second Amendment rights of citizens. The Executive Order also instructed the AG and the Domestic Policy Advisor (Vince Haley) to formulate a plan of action.

6. On May 13, 2025, while the judgment of the Northern District of Texas was on appeal, the Department of Justice settled the case along with the case against RBT, thereby rendering FRTs legal under federal (and Texas) law, though FRTs remain illegal under state law in approximately 15 states.

7. Since May 16, 2025, Defendants have filed at least twenty-one patent infringement lawsuits alleging infringement of the Asserted Patents and at least seven additional lawsuits alleging infringement of other FRT-related patents.

8. Since January 7, 2026, Defendants ABC and RBT have filed at least nine lawsuits against resellers of the Atrius Selektor alleging infringement of the Asserted Patents (collectively, "Customer Lawsuits"), including the following cases spread across the United States:

*ABC IP, et al. v. Hawkphin Sales, LLC.*, et al., 4:26-cv-00015 (S.D. Iowa).
*ABC IP, et al. v. Webcorp., Inc., et al.*, 4:26-cv-00018 (E.D. Mo.).
*ABC IP, et al. v. Superior Firearms of Texas, LLC*, 2:26-cv-00058 (E.D. Tex.)
*ABC IP, et al. v. Mister Guns, LLC et al.*, 2:26-cv-00056 (E.D. Tex.)
*ABC IP, et al. v. ProSource Firearms, LLC*, 2:26-cv-00055 (E.D. Tex.)
*ABC IP, et al. v. PistolCap Limited Company, d/b/a Frisco Guns et al.*, 2:26-cv-00053 (E.D. Tex.)
*ABC IP, et al. v. Optics Planet, Inc. d/b/a OpticsPlanet*, 1:26-cv-01072 (N.D. Ill.)
*ABC IP, et al. v. Orion Arms Corp. d/b/a Orion Wholesale*, 4:26-cv-00032 (S.D. Ind.)
*ABC IP, et al. v. HK Parts Inc.*, 2:26-cv-90 (D. Utah)

9. Each existing (and potential future) Customer Lawsuit has caused, and will continue to cause, harm to Atrius, including through financial loss, litigation burden, business disruption, reputational damage, and strain on customer relationships.

10. It is not in the substantial interest of justice or an efficient use of judicial resources for Atrius to be forced to defend itself and its customers from Defendants' unjustified patent infringement claims serially and/or in multiple lawsuits in various district courts across the United States.

11. Atrius seeks relief to resolve the controversy between the real parties in interest, Atrius and Defendants, to protect Atrius's existing and prospective customer relationships, to

protect Atrius's lawful, independent innovation, and to remove the uncertainty and false accusations of patent infringement targeting the Selektor in district courts across the country. Atrius asks this Court to eliminate the harm and risk Atrius has faced, and continues to face, from Defendants' ongoing campaign of intimidation and meritless litigation by declaring that: (i) the Selektor product has not and does not infringe any claim of the Asserted Patents; (ii) the reselling and use of the Selektor have not and do not infringe any valid claim of the Asserted Patents; (iii) all claims of the Asserted Patents are invalid; and (iv) the '247 patent is unenforceable due to inequitable conduct.

## PARTIES

12. Plaintiff Atrius is a corporation organized and existing under the laws of the State of Texas and with an address of 200 Congress Ave., Unit 31W, Austin, TX 78701.

13. Atrius's Selektor product (pictured below) is a drop-in replacement safety selector that is compatible with standard AR-15 fire control groups with no modifications required. The Selektor enables a user to have three positions: SAFE, SEMI-AUTOMATIC (traditional), and FULL-SEMI.



14. On information and belief, Defendant ABC is a limited liability company organized and existing under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

15. On information and belief, Defendant ABC does not make, use, sell, or offer for sale any products in the United States.

16. On information and belief, Defendant RBT is a corporation organized and existing under the laws of the State of Texas with addresses of 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306 and 15511 Highway 71 West, Ste. 110444, Austin, TX 78738. Based on records available from the Texas Secretary of State, Defendant RBT's registered agent for service of process is Samuel Eastman with an address of 2110 S. Lamar Blvd., Suite G, Austin, TX 78704.

17. On information and belief, Defendant RBT makes, uses, sells, and offers for sale products in the United States, including a trigger mechanism called the FRT-15L3 (pictured below).




FRT-15L3™

Forced Reset Trigger for the AR-15

18. On information and belief, Defendants do not contend any claim of the Asserted Patents cover the FRT-15L3.

**ASSERTED PATENTS**

19. The ’784 patent is entitled “Adapted Forced Reset Trigger” and was issued by the United States Patent and Trademark Office on July 9, 2024. Ex. A is a true and correct copy of the ’784 patent.

20. The ’247 patent is entitled “Firearm Trigger Mechanism” and was issued by the United States Patent and Trademark Office on July 16, 2024. Ex. B is a true and correct copy of the ’247 patent.

21. Defendant ABC asserts in ongoing litigation that it is the current owner by assignment of all right, title, and interest in and to the Asserted Patents. On information and belief, Defendant ABC's business is limited to owning and enforcing patents through repeated lawsuits in this District and elsewhere.

22. Defendant RBT asserts in ongoing litigation that it is the exclusive licensee of the Asserted Patents.

23. Defendants, together with their attorney Glenn Bellamy, fraudulently obtained the '247 patent through a pattern of deceit during patent prosecution, including intentionally withholding at least three material prior art references with the intent to deceive the United States Patent and Trademark Office ("USPTO"), as detailed below.

## JURISDICTION AND VENUE

24. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, including Title 35, United States Code.

25. The Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), and/or 2201, and 2202.

26. General personal jurisdiction over Defendant RBT is proper in Texas because, on information and belief, RBT is organized under Texas law and therefore resides in Texas.

27. On information and belief, Defendant RBT maintains a regular and established place of business in this District at 15511 Highway 71 West, Ste. 110444, Austin, TX 78738.

28. Specific personal jurisdiction over both Defendants is proper because they have purposefully directed activities or transactions to the State of Texas and have performed acts purposefully availing themselves of the privilege of conducting activities in Texas related to the subject matter of this case. For example, Defendant RBT conducts business on an ongoing basis

in this judicial district and elsewhere in the United States, and Defendants ABC and RBT have together filed at least one patent infringement lawsuit in this District alleging infringement of the '247 patent. *See ABC IP, et al. v. Hanes Tactical LLC et al.*, 3:25-cv-00201 (W.D. Tex.). Defendants ABC and RBT have filed at least nine patent infringement lawsuits in judicial districts in the State of Texas, including at least one lawsuit in the Western District of Texas, one in the Southern District of Texas, and seven in the Eastern District of Texas. Certain of those cases are identified in ¶ 8 of this Complaint. Additionally, ABC IP has brought two suits in this judicial district pertaining to sales of FRTs. *ABC IP, et al. v. Spider Hole, et al.*, 1:25-cv-864 (W.D. Tex.); *ABC IP, et al. v. Spider Hole, et al.*, 1:25-cv-1626 (W.D. Tex.).

29. Defendants are subject to this Court's specific and general personal jurisdiction pursuant to constitutional due process and the Texas Long-Arm Statute, due at least to their extensive business in the state of Texas and in the jurisdiction of this District, including the actions alleged herein. This Court has specific and general personal jurisdiction over Defendants at least because Defendants (1) regularly did business or solicited business in the state of Texas and in this District; (2) engaged in other persistent courses of conduct in the state of Texas and in this District; and (3) purposefully established substantial, systematic, and continuous contacts with the state of Texas and with this District and should have reasonably expected to be subject to suit here based on their residency and/or business activities in Texas, by their maintenance of regular and established place(s) of business in the State of Texas and in this District, and by filing and maintaining patent infringement lawsuits in federal district courts throughout the State of Texas, including in this District.

30. Venue is proper in this judicial district under at least 28 U.S.C. §§ 1391(b), (c) and/or 28 U.S.C. § 1400(b). Venue in this District is proper at least because Plaintiff Atrius and

Defendant RBT reside in this District and/or maintain a regular and established place of business in this District as detailed above, and because personal jurisdiction is proper over all defendants. Venue in this District is also proper at least because a substantial part of the harm to Atrius occurred and is occurring in this District and a substantial part of the events or omissions giving rise to Atrius's claims occurred in this District.

## COUNT ONE: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '784 PATENT

31. Atrius repeats and realleges the foregoing paragraphs as if fully set forth herein.

32. ABC has asserted that it is the current owner by assignment of all right, title, and interest in and to the '784 patent.

33. RBT has asserted that it is the exclusive licensee of the '784 patent.

34. Defendants have asserted in ongoing litigation that the Selektor embodies the technology claimed in the '784 patent and that the standalone Selektor product infringes the '784 patent.

35. Defendants have also asserted in ongoing litigation that the Selektor infringes the '784 patent when sold or used in combination with separate trigger mechanism parts, when sold pre-installed in a receiver, and when sold or used as part of a complete firearm.

36. As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding infringement to warrant the issuance of a declaratory judgment of non-infringement.

37. A judicial declaration is necessary and appropriate so that Atrius may ascertain its rights regarding the Selektor and the '784 patent.

38. The Selektor and uses thereof do not infringe and have not infringed the '784 patent and Atrius has not contributed to or induced infringement of any claim of the '784 patent at least

because the Selektor, whether as a standalone part or installed and used as intended, does not embody the limitations of any claim of the ’784 patent.

39. The ’784 patent is directed to solving a problem relating to applying the invention of United States Patent No. 10,514,223 (“the ’223 patent”) to an AR-10 pattern firearm.

40. As Defendants know, the Selektor is compatible with mil-spec AR-15 pattern firearms.

41. As Defendants know, the Selektor is not compatible with AR-10 pattern firearms.

42. The ’784 patent discloses two embodiments of the claimed “locking member.”

43. Two disclosed embodiments of the claimed “locking member” in the ’784 patent are locking member (bar) 12 and locking member (bar) 48.

44. When locking member (bar) 12 of the ’784 patent is in a first position in which it locks trigger member 14 against pulling movement, locking member body 26 directly contacts trigger member 14.

45. Locking member 12 of the ’784 patent, including locking member body 26 and foldable extension 22, pivots as a unit when actuated by bolt carrier assembly 16 traveling forward.

46. Locking member 12 of the ’784 patent is supported by trigger housing 18 and pivot pin 20.

47. Locking member 12 of the ’784 patent, including locking member body 26 and foldable extension 22, pivots on pivot pin 20 when actuated by bolt carrier assembly 16 traveling forward.

48. The ’784 patent does not disclose an embodiment of the claimed “locking member” that is or includes a firearm’s safety selector.

49. The ’784 patent does not disclose an embodiment in which the claimed “locking member” is supported by a safety selector.

50. The Selektor is not and does not contain a locking member with a body portion and an upwardly extending deflectable portion as disclosed and described in the ’784 patent.

51. By way of example, and without limitation, the Selektor does not infringe, has not infringed, and cannot be and has not been used to infringe at least one or more of the following limitations as recited in claim 1 of the ’784 patent, whether sold as a standalone product or installed and used as intended:

- “extended trigger member locking device”
- “a locking member”
- “the locking member configured to be movably supported by a frame and including a generally upward extension portion configured to make actuating contact with a surface of a bolt carrier”
- “such actuating contact causing the locking member to move from the first position to the second position”
- “the locking member having a body portion that is movably supported and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position and a deflected position.”

52. For at least these reasons, the Selektor, whether sold alone or installed and used as intended, does not infringe, and has not infringed, any claim of the ’784 patent.

53. Atrius is entitled to a declaratory judgment that Atrius and the Selektor and uses thereof do not infringe, and have not infringed, either directly or indirectly, literally or under the doctrine of equivalents, any claim of the ’784 patent.

## COUNT TWO:
## DECLARATORY JUDGMENT OF INVALIDITY OF THE ’784 PATENT

54. Atrius repeats and realleges the foregoing paragraphs as if fully set forth herein.

55. Defendants have asserted in ongoing litigation that the Selektor embodies the technology claimed in the ’784 patent and that the standalone Selektor product infringes claims of the ’784 patent.

56. Defendants have also asserted in ongoing litigation that the Selektor infringes the ’784 patent when sold or used in combination with separate trigger mechanism parts, when sold pre-installed in a receiver, and when sold as part of a complete firearm.

57. As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding the validity of the claims of the ’784 patent to warrant the issuance of a declaratory judgment of invalidity. Accordingly, there exists an actual and justiciable controversy between the parties regarding the validity of the claims of the ’784 patent.

58. The claims of the ’784 patent fail to meet one or more requirements of the patent laws of the United States, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

59. A judicial declaration of invalidity is necessary and appropriate so that Atrius may ascertain its rights regarding the ’784 patent.

## COUNT THREE: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE ’247 PATENT

60. Atrius repeats and realleges the foregoing paragraphs as if fully set forth herein.

61. ABC has asserted that it is the current owner by assignment of all right, title, and interest in and to the ’247 patent.

62. RBT has asserted that it is the exclusive licensee of the ’247 patent.

63. Defendants have asserted in ongoing litigation that the Selektor embodies the technology claimed in the ’247 patent and that the standalone Selektor product infringes at least claim 15 of the ’247 patent.

64. Defendants have also asserted in ongoing litigation that the Selektor infringes at least claim 15 of the ’247 patent when sold or used in combination with separate trigger mechanism parts, when sold pre-installed in a receiver, and when sold or used as part of a complete firearm.

65. As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding infringement to warrant the issuance of a declaratory judgment of non-infringement.

66. A judicial declaration is necessary and appropriate so that Atrius may ascertain its rights regarding the Selektor and the ’247 patent.

67. The Selektor and uses thereof do not infringe and have not infringed the ’247 patent and Atrius has not contributed to or induced infringement of any claim of the ’247 patent at least because the Selektor, whether as a standalone part or installed and used as intended, does not practice or embody the limitations of any claim of the ’247 patent.

68. All claims of the ’247 patent include a requirement that, during operation in forced reset semi-automatic mode, the firearm’s disconnector hook is prevented from catching the firearm’s hammer hook during rearward movement of the bolt carrier.

69. During operation of an AR-15 pattern firearm with the Selektor installed and set to "FULL-SEMI" mode, the firearm's disconnector hook catches the hammer hook during rearward movement of the bolt carrier.

70. During operation of an AR-15 pattern firearm with the Selektor installed and set to "FULL-SEMI" mode, the firearm's disconnector hook is not prevented from catching the hammer hook.

71. The '247 patent discloses cam 72 as a component that is separate from safety selector 110.

72. The '247 patent discloses cam lobe 78 interacting with cam follower 58 of trigger member 38.

73. Trigger member 38, hammer 36, and disconnector 60 of the '247 patent are not standard (i.e., mil-spec) AR-15 trigger, hammer, and disconnector.

74. The '247 patent does not disclose cam 72 interacting with safety selector 110.

75. The '247 patent does not disclose cam 72 contacting safety selector 110.

76. The Selektor includes a safety selector.

77. The Selektor does not include a cam as disclosed and described in the '247 patent.

78. The Selektor does not require installation of a non-mil-spec trigger, non-mil-spec hammer, or non-mil-spec disconnector.

79. By way of example, and without limitation, the Selektor does not infringe, has not infringed, and cannot be and has not been used to infringe at least one or more of the following limitations as recited in claim 15 of the '247 patent, whether sold as a standalone product, installed in a receiver, or sold or used as part of a complete firearm:

- "a cam having a cam lobe . . . said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member toward said set position"
- "whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catch said hammer hook"

80. For at least these reasons, the Selektor and uses thereof do not infringe, and have not infringed, the '247 patent.

81. Atrius is entitled to a declaratory judgment that Atrius and the Selektor and uses thereof do not infringe, and have not infringed, either directly or indirectly, literally or under the doctrine of equivalents, any claim of the '247 patent.

**COUNT FOUR:**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '247 PATENT**

82. Atrius repeats and realleges the foregoing paragraphs as if fully set forth herein.

83. Defendants have asserted in ongoing litigation that the Selektor embodies the technology claimed in the '247 patent and that the standalone Selektor infringes claims of the '247 patent.

84. Defendants have also asserted in ongoing litigation that the Selektor infringes the '247 patent when sold or used in combination with separate trigger mechanism parts, when sold pre-installed in a receiver, and when sold or used as part of a complete firearm.

85. As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding the validity of the claims of the '247 patent to warrant the issuance of a declaratory judgment of invalidity. Accordingly, there exists an

actual and justiciable controversy between the parties regarding the validity of the claims of the ’247 patent.

86. The claims of the ’247 patent fail to meet one or more requirements of the patent laws of the United States, including without limitation 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

87. A judicial declaration of invalidity is necessary and appropriate so that Atrius may ascertain its rights regarding the ’247 patent.

**COUNT FIVE:**
**DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE ’247 PATENT DUE TO INEQUITABLE CONDUCT**

88. A patent is unenforceable due to inequitable conduct if: “(1) an individual associated with the filing and prosecution of the patent application made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false information; and (2) the individual did so with a specific intent to deceive the PTO.” *In re BP Lubricants USA, Inc*., 637 F.3d 1307, 1327 n.3 (Fed. Cir. 2011).

89. A pleading of inequitable conduct “must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.” *Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1328 (Fed. Cir. 2009).

90. Each individual associated with the filing and prosecution of a patent application has a duty of candor to and a duty of good faith in dealing with the USPTO. This includes a duty to disclose to the USPTO all information known to that individual to be material to the patentability of any pending claim. *See* 37 C.F.R. § 1.56(a).

91. The foregoing obligations apply to all individuals associated with the filing or prosecution of a patent application, including: (1) inventors, (2) attorneys or agents who prepare or prosecute the application, and (3) every other person who is substantively involved in the preparation or prosecution of the application and who is associated with an inventor, an applicant, an assignee, or anyone to whom there is an obligation to assign the application. 37 C.F.R. § 1.56(a); Manual of Patent Examining Procedure § 2001.01. A person is considered to be substantively involved in the preparation or prosecution of the application if that person's "involvement relates to the content of the application or decisions related thereto, and that the involvement is not wholly administrative or secretarial in nature." *Avid Identification Sys., Inc. v. Crystal Import Corp.*, 603 F.3d 967, 974 (Fed. Cir. 2010).

92. The '247 patent issued on application no. 18/325,225 (the "'225 Application"), which was filed May 30, 2023.

93. The '225 Application claimed the benefit of provisional application no. 63/374,941 ("Provisional Application"), which was filed September 8, 2022.

94. Mr. Glenn D. Bellamy is a patent attorney for ABC IP, LLC.

95. Mr. Glenn D. Bellamy is identified on an Electronic Acknowledgement Receipt as the person who authorized the filing of the Provisional Application and is also indicated on an Electronic Payment Receipt as the person who authorized the payment of the filing fee for the Provisional Application.

96. Mr. Bellamy is also indicated on an Electronic Acknowledgement Receipt as the person who authorized the filing of the '225 Application that resulted in the '247 patent.

97. Mr. Bellamy signed or submitted documents submitted during the prosecution of the '247 patent, including at least (a) Transmittal for Power of Attorney to One or More Registered

Practitioners, identifying himself as the "Attorney of Record"; (b) Application Data Sheet; (c) Patent Assignment; (d) Comments on Examiner's Reasons for Allowance; and (e) Fee(s) Transmittal form for the issue fee.

98. On information and belief, Lawrence DeMonico, President of RBT, was also substantively involved with prosecution of the '225 Application that became the '247 patent.

99. At least as early as September 8, 2022, Mr. Bellamy and Mr. DeMonico had a duty of candor to and a duty of good faith in dealing with the USPTO in connection with the prosecution of the '225 Application.

100. At least as early as September 8, 2022, Mr. Bellamy and Mr. DeMonico had a duty to disclose to the USPTO all information known to them to be material to the patentability of any pending claim.

101. In the Notice of Allowance of the '225 Application (attached hereto as Ex. C), the USPTO Examiner stated that (in his opinion) the closest prior art for all pending claims was U.S. Patent 7,398,723 ("Blakley '723"). The Examiner also stated that Blakley '723 discloses various claim limitations of the '225 Application, including the "hammer," "trigger member," "disconnector," and "cam" limitations of claims 1, 4, 9, 14, 15 and 20.

102. The Examiner stated in the Notice of Allowance that (in his opinion), Blakley '723 does not disclose the following elements of independent claims 1, 4, 9, 14, and 20:

[a] a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions;

[b] whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member towards said set position

but prior to reaching said set position said disconnector hook catches said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm; and

[c] whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

103. The above-identified portion [a] corresponds to the "safety selector" limitation of claims 1, 4, 9, 14, and 20 of the '247 patent.

104. The above-identified portion [b] corresponds to the first "whereupon" limitation regarding the "standard semi-automatic position" of claims 1, 4, 9, 14, and 20 of the '247 patent.

105. The above-identified portion [c] corresponds to the second "whereupon" limitation regarding the "forced reset semi-automatic position" of claims 1, 4, 9, 14, and 20 of the '247 Patent.

106. The Examiner also stated in the Notice of Allowance that (in his opinion), Blakley '723 does not disclose the following elements of independent claim 15:

[b] a trigger mechanism whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such

that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm; and

[c] whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

107. The above-identified portion [b] corresponds to the first "whereupon" limitation regarding the "standard semi-automatic mode" of claim 15 of the '247 Patent.

108. The above-identified portion [c] corresponds to the second "whereupon" limitation regarding the "forced reset semi-automatic mode" of claim 15 of the '247 Patent.

109. On information and belief, Mr. Bellamy and Mr. DeMonico were aware of prior art that disclosed each of these above-identified limitations that the Examiner believed were missing from Blakley '723, including the prior art identified below.

110. On information and belief, Mr. Bellamy, together with Mr. DeMonico, had knowledge of and intentionally withheld at least the material references identified below during prosecution of the '225 Application with the intent to deceive the USPTO.

111. Mr. Bellamy also made an affirmative representation in the specification of the '247 patent that intentionally and deceptively excluded a known prior art reference from consideration as prior art to the '247 patent, as explained below.

112. The single most reasonable inference from the facts alleged herein, including an extensive pattern of intentional withholding of material prior art references (by Mssrs. Bellamy

and DeMonico), and the affirmative statement by Mr. Bellamy that had the effect of falsely claiming a prior art exception, is that Mssrs. Bellamy and DeMonico intended to—and did—deceive the USPTO into issuing an invalid patent.

113. The conduct of Mr. Bellamy, together with Mr. DeMonico, constitutes inequitable conduct that renders all claims of the ’247 patent unenforceable.

**Tommy Triggers FRT-15-3MD Prior Art**

114. Material prior art known to, and withheld by, Mr. Bellamy and Mr.DeMonico includes a trigger assembly sold by Mr. Mladen Thomas Strbac (d/b/a Tommy Triggers) called the FRT-15-3MD.

115. The FRT-15-3MD was in public use, on sale, or otherwise available to the public before the Provisional Application was filed.

116. The FRT-15-3MD was in public use, on sale, or otherwise available to the public before the ’225 Application was filed.

117. The FRT-15-3MD qualifies as prior art to the ’247 patent under 35 U.S.C. §102(a)(1).

118. Mr. Bellamy was aware of the FRT-15-3MD because he signed and filed a patent infringement complaint against Mr. Strbac/Tommy Triggers on behalf of ABC and RBT on February 21, 2022. *See Rare Breed Triggers, LLC v. Strbac*, No. 1:22-cv-280 (N.D. Ohio) (ECF No. 1, “Strbac Complaint,” attached hereto as Exhibit D). That complaint describes and includes several photos of the FRT-15-3MD. That complaint includes, as an exhibit, a cease-and-desist letter dated January 17, 2022, signed by Mr. Bellamy and sent to Tommy Triggers regarding that trigger assembly.

119. On information and belief, Mr. DeMonico was aware of the FRT-3MD because the suit against Tommy Triggers was brought on behalf of ABC and RBT. In addition, the case was ultimately settled, and Mr. DeMonico would likely have signed, approved, and/or negotiated the agreement on behalf of RBT.

120. Some of the photos of the FRT-15-3MD from the Strbac Complaint are shown below:




121. The photos included in the Strbac Complaint evidence that at least Mr. Bellamy was in possession of the FRT 15-3MD.

122. Mr. Strbac filed a provisional patent application (no. 63/297,884) on January 10, 2022, which discloses limited information about the FRT-15-3MD.

123. The FRT-15-3MD was material to the patentability of at least claims 1, 4, 9, 14, 15, and 20 of the '225 Application and should have been disclosed to the USPTO.

124. The FRT-15-3MD discloses all the claim limitations identified by the Examiner as missing from the prior art of record (*i.e.,* the limitations identified above in ¶¶ 102, 106).

125. As evidenced by the Strbac Complaint (in ¶¶ 44-47), a firearm with the FRT-15-3MD has a safety selector (that would be mounted in the fire control mechanism pocket) that can be rotated to switch between safe, standard semiautomatic, and forced-reset semiautomatic modes. This disclosure of a three-position safety selector used with a forced-reset trigger discloses portion [a] of what the Examiner found missing from the cited prior art in ¶ 102 above.

126. As shown in the Strbac Complaint (in ¶¶ 27, 29, 45), a firearm with the FRT-15-3MD can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. In that standard semiautomatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. This disclosure of a standard semiautomatic mode discloses portion [b] of what the Examiner found missing from the cited prior art in ¶¶ 102, 106 above.

127. The Strbac Complaint also evidences (in ¶¶ 44-45, 47, 50, 76) that a firearm with the FRT-15-3MD can operate in forced-reset mode. In that mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer, but the FRT-15-3MD prevents the disconnector hook from catching the hammer hook. Thereafter, the bolt carrier moves forward into battery, at which time the user can pull the trigger member to fire the firearm without manually releasing the

trigger member. This disclosure of a forced-reset semiautomatic mode meets portion [c] of what the Examiner found missing from the cited prior art in ¶¶ 102, 106 above.

128. A person of ordinary skill in the relevant art would have been motivated to modify the Blakley ’723 trigger mechanism to include a three-position safety selector as taught by the FRT-15-3MD to allow the firearm to operate in each of three modes (safe, standard semiautomatic, and forced-reset semiautomatic), wherein the disconnector is prevented from catching the hammer hook in forced-reset semiautomatic mode.

129. Had the Examiner been aware of the FRT-15-3MD, he would have rejected at least pending claims 1, 4, 9, 14, 15, and 20 of the ‘225 Application under 35 U.S.C. §103 in light of Blakely ’723 and the FRT-15-3MD.

130. Neither Mr. Bellamy nor Mr. DeMonico, nor anyone else involved with prosecuting the ’225 Application, disclosed the FRT-15-3MD to the USPTO during prosecution of the ’225 Application.

131. On information and belief, Mr. Bellamy and/or Mr. DeMonico developed a scheme to deceive the USPTO into excluding a description of a modified FRT-15-3MD from consideration as prior art to conceal their inequitable conduct and obtain issuance of the ’247 patent, as described below.

132. During prosecution of the ’247 patent, ABC disclosed U.S. Patent No. 11,724,003 to Thomas Strbac (“Strbac ’003”) in an Information Disclosure Statement (“IDS”) filed August 31, 2023. That IDS additionally identified 114 issued patents, 25 published patent applications, 7 foreign patent documents, and 1 non-patent literature document. On information and belief, the extensive IDS, identifying approximately 150 items, served the purpose of obscuring the disclosure and relevance of Strbac ’003.

133. Strbac ’003 issued on application no. 18/048,572 (“the ’572 Strbac Application”), which was authorized by Mr. Bellamy and filed on October 21, 2022—*after* Mr. Bellamy filed the Provisional Application to which the ’247 patent claims priority. The ’572 Strbac Application discloses aspects of a modified version of the FRT-15-3MD, and its disclosure adds substantial new matter relative to Strbac provisional application No. 63/297,884.

134. The new matter added to the ’572 Strbac Application is not entitled to priority as of the filing date of Strbac provisional application No. 63/297,884 (January 10, 2022). Instead, all new matter added to the ’572 Strbac Application relative to the provisional application has an effective filing date of the ’572 Strbac Application (October 21, 2022).

135. The ’225 Application incorporates by reference the’572 Strbac Application and identifies it as “assignee’s” pending patent application (i.e., owned by Defendant ABC)—thus representing to the USPTO that the ’572 Strbac Application was commonly owned with the ’225 Application. Under the Manual of Patent Examining Procedure (e.g., MPEP § 717.02(a)), this affirmative statement had the effect of excluding Strbac ’003 as prior art under 35 U.S.C. § 102(b)(2)(C) based on common ownership by Defendant ABC of Strbac ’003 and the ’225 Application, even though Mr. Bellamy and Mr. DeMonico knew the FRT-15-3MD product was prior art to the claims of the ’225 Application.

136. Mr. Bellamy and Mr. DeMonico thus deceptively removed Strbac ’003 from consideration as prior art during prosecution. Indeed, the Examiner did not discuss Strbac ’003 or the ’572 Strbac Application during prosecution or use it in a rejection, despite their obvious similarities.




FIG. 3




FIG. 3

**Blakely ’247, Fig. 3 vs. Strbac ’003, Fig. 3**

137. While direct evidence of Mr. Bellamy’s and Mr. DeMonico’s state of mind is solely within their control, the information available to Atrius confirms that the single most reasonable reference is that Mr. Bellamy and Mr. DeMonico intentionally withheld the FRT-15-3MD from the USPTO to obtain allowance of the ’225 Application and issuance of the ’247 patent. That inference is supported by Mr. Bellamy’s and Mr. DeMonico’s undeniable knowledge of the structure, operation, and materiality of the FRT-15-3MD (based at least on the Strbac Complaint) and their inexplicable failure to disclose the FRT-15-3MD during prosecution. This inference is further supported by the statement in the ’247 patent that the ’572 Strbac Application was commonly owned by ABC IP, LLC, thereby intending to remove it (and the resulting Strbac ’003 patent) from consideration as prior art to the ’247 patent. By filing the Provisional Application on September 8, 2022, then filing the ’572 Strbac Application on October 21, 2022, then identifying

the '572 Strbac Application as commonly owned in the specification of the '225 Application—without disclosing the prior art FRT-15-3MD—Mr. Bellamy and Mr. DeMonico successfully and intentionally concealed the FRT-15-3MD from the USPTO with the intent to deceive.

138. On information and belief, Mr. Bellamy and Mr. DeMonico were aware that the FRT-15-3MD discloses one or more limitations that the Examiner believed were missing from Blakley '723 and the other prior art of record.

139. Atrius filed a petition for *inter partes* review of the '247 patent on August 29, 2025, alleging claims of the '247 patent are unpatentable based on Blakely '723 in combination with one or more videos depicting certain aspects of the FRT-15-3MD. The petition relied on videos of the FRT-15-3MD—rather than the product itself—because *inter partes* review petitions are limited to unpatentability grounds based on prior art consisting of patents or printed publications (i.e., excluding products in public use, on sale, or otherwise available to the public). *See* 35 U.S.C. § 311(b).

140. In response to Atrius's petition for *inter partes* review, Defendants argued (among other things) that Atrius was improperly attempting to rely on the FRT-15-3MD product itself; that the videos identified in the petition do not qualify as printed publications for use in an *inter partes* review and were not publicly accessible; and that the videos on which Atrius relied failed to disclose how the product operates.

141. Atrius's petition was denied without opinion on February 18, 2026. Neither the Examiner (during examination of the '247 patent) nor the Patent Trial and Appeal Board (in reviewing the petition for *inter partes* review) ever discussed or distinguished the FRT-15-3MD product (or the combination of Blakely '723 and FRT-15-3MD) from the claims of the '247 patent or Strbac '003.

142. To date, Defendants have successfully prevented the USPTO from considering or passing judgment on patentability of the ’247 claims based on Blakley ’723 in view of the FRT-15-3MD.

**Rare Breed FRT-15E3 Prior Art**

143. The Strbac Complaint (in ¶38) also states that on January 15, 2022—two days before sending a cease-and-desist letter to Tommy Triggers regarding the FRT-15-3MD—Mr. DeMonico publicly disclosed and demonstrated the operation of a three-position forced-reset trigger in which a safety selector switch can change the mode of operation between safe, standard semiautomatic with disconnector, and forced reset semiautomatic modes. The Strbac Complaint refers to this three-position trigger as the FRT-15E3 and shows a photo of it:




144. A video of Mr. DeMonico, RBT’s President, demonstrating a firearm with the FRT-15E3 installed and operational was uploaded to YouTube on January 15, 2022, at

https://www.youtube.com/watch?v=ZJ0lWi2kfC0. The video confirms details about the FRT-15E3.

145. The FRT-15E3 was disclosed to the public before the Provisional Application to which the '225 Application claims priority was filed.

146. The FRT-15E3 was disclosed to the public before the '225 Application was filed.

147. On information and belief, Defendants (including Mr. DeMonico) did not obtain from Mr. Blakley the design of the FRT-15E3 depicted in the DeMonico video.

148. On information and belief, Mr. Blakley began contributing to Defendants' design and development efforts after Defendants had already tested and publicly disclosed (through at least the January 15, 2022, YouTube video identified above) a three-position selector with safe, standard semi-automatic, and forced reset semi-automatic positions.

149. The FRT-15E3 qualifies as prior art to the '247 patent under 35 U.S.C. §102(a)(1) and, on information and belief, is not subject to either exception of 35 U.S.C. §102(b)(1).

150. The FRT-15E3 was material to the patentability of at least claims 1, 4, 9, 14, 15, and 20 of the '225 Application and should have been disclosed to the USPTO.

151. As evidenced by the Strbac Complaint (in ¶ 38) and the YouTube video, a firearm with the FRT-15E3 has a safety selector (that would be mounted in the fire control mechanism pocket) that can switch between safe, standard semiautomatic, and forced reset semiautomatic modes. This disclosure of a three-position safety selector used with a forced reset trigger discloses portion [a] of what the Examiner found missing from the cited prior art in ¶ 102 above.

152. The Strbac Complaint evidences (in ¶¶ 27, 29, 38, 45) that a firearm with the FRT-15E3 can operate in a standard semiautomatic with disconnector mode, which is much like that of a standard AR-15 trigger. In that standard semiautomatic mode, rearward movement of the bolt

carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. This disclosure of a standard semiautomatic mode discloses portion [b] of what the Examiner found missing from the cited prior art in ¶¶ 102, 106 above.

153. The Strbac Complaint also evidences (in ¶¶ 35-36, 38, 45) that a firearm with the FRT-15E3 can operate in forced-reset semiautomatic mode, like the FRT-15 model also described in that complaint. In that mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer, but the FRT-15E3 prevents the disconnector hook from catching the hammer hook. Thereafter, the bolt carrier moves forward into battery, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member. This disclosure of this forced-reset semiautomatic mode meets portion [c] of what the Examiner found missing from the cited prior art in ¶¶ 102, 106 above.

154. A person of ordinary skill in the art would have been motivated to modify the trigger mechanism of Blakley '723 to include a three-position safety selector as taught by the FRT-15E3 to allow the firearm to operate in each of three modes (safe, standard semiautomatic with disconnector, and forced-reset semiautomatic), wherein the disconnector is prevented from catching the hammer hook in forced-reset semiautomatic mode.

155. Had the Examiner been aware of the FRT-15E3, he would have rejected at least pending claims 1, 4, 9, 14, 15, and 20 of the '225 Application under 35 U.S.C. §103 in light of Blakely and the FRT-15E3.

156. Neither Mr. Bellamy nor Mr. DeMonico, nor anyone else involved with prosecution of the ’225 Application, disclosed the FRT-15E3 to the USPTO during prosecution of the ’225 Application.

157. While direct evidence of Mr. Bellamy’s and Mr. DeMonico’s state of mind is solely within their control, the information available to Atrius confirms that the single most reasonable reference is that Mr. Bellamy and Mr. DeMonico intentionally withheld the FRT-15E3 from the USPTO to obtain allowance of the ’225 Application and issuance of the ’247 Patent. That inference is supported by Mr. Bellamy’s and Mr. DeMonico’s undeniable knowledge of the structure, operation, and materiality of the FRT-15E3 (because it was Defendants’ own product publicly disclosed before the Provisional Application was filed) and their inexplicable failure to disclose the FRT-15E3 during prosecution despite the Examiner’s belief that the prior art failed to disclose the claim limitations identified in ¶¶ 102, 106 above.

158. Mr. Bellamy was aware of the FRT-15E3 because he discussed and showed it in the Strbac Complaint in early 2022, after the FRT-15E3 was publicly disclosed but before the Provisional Application or the ’225 Application were filed.

159. Mr. DeMonico was aware of the FRT-15E3 because he publicly disclosed and used it in a video posted to YouTube before the Provisional Application or the ’225 Application were filed.

160. On information and belief, Mr. Bellamy and Mr. DeMonico were aware that the FRT-15E3 discloses one or more limitations that the Examiner believed were missing from Blakley ’723 and the other prior art of record and deliberately and intentionally withheld the FRT-15E3 from the USPTO with the intent to deceive.

**Super Safety**

161. In early 2022, ABC and RBT discovered that Timothy Hoffman d/b/a Hoffman Tactical LLC was offering and distributing a downloadable 3D-printable modification to a standard AR-pattern trigger that effectively converted such trigger to a forced reset trigger. *See* ¶ 23 of Defendants' Original Complaint in *ABC IP, LLC v. Timothy Hoffman et al.*, Case 1-25-cv-00389 (E.D. Ten.) (ECF No. 1, "Hoffman Complaint," attached hereto as Ex. E).

162. Mr. Bellamy sent a cease-and-desist letter dated February 9, 2022, to Timothy Hoffman, alleging infringement of ABC's U.S. Patent No. 10,514,223. *See* ¶ 24 of Hoffman Complaint.

163. ABC entered into a settlement agreement to resolve the dispute with Mr. Hoffman on February 24, 2022. *See* ¶ 24 of Hoffman Complaint.

164. On information and belief, Defendants monitored Mr. Hoffman's public activities relating to FRTs beginning on or before early 2022, at least because Mr. Hoffman indicated to Defendants in early 2022 that he planned to design a non-infringing device.

165. Mr. Hoffman publicly disclosed the Super Safety product in a video posted on YouTube on May 7, 2023: https://www.youtube.com/watch?v=auAqg-FiHv4 (see 15:07 of video). The Super Safety is disclosed as being slidably mounted in the firearm, i.e., a push-button safety selector.

166. The Super Safety disclosed in the YouTube video identified was mounted in the fire control mechanism pocket and could switch between safe, standard semiautomatic, and forced reset semiautomatic modes. This disclosure of a three-position safety selector used with a forced reset trigger discloses portion [a] of what the Examiner found missing from the cited prior art in ¶ 102 above.

167. On May 30, 2023—approximately three weeks after Mr. Hoffman publicly disclosed the Super Safety—ABC filed the '225 Application that resulted in the '247 patent. The '225 Application added disclosure that was not included in the Provisional Application (i.e., new matter). New matter introduced in a non-provisional patent application claiming priority to a provisional application is entitled to priority as of the filing date of the non-provisional application and is not entitled to priority based on the filing date of the provisional application.

168. For example, the Provisional Application discloses the claimed cam and safety selector only as being "pivotable," and the claims of the Provisional Application required both the cam and safety selector to be pivotable.

169. The Provisional Application does not disclose the claimed cam or safety selector being slidably mounted, nor does the Provisional Application include the word "slidable" or "slidably."

170. The Provisional Application does not contain the word "movable" or "movably."

171. The '225 Application added new matter disclosing that, in the alternative to being mounted to pivot, "the cam 72 can be slidably mounted to the housing." The '225 Application also included one claim—i.e., claim 14—that was not included in the Provisional Application and captured the new matter by allowing the claimed cam to be "movably mounted," which broadened the scope of the claim to cover a cam that is mounted to pivot (as disclosed in the Provisional Application) or a cam that is slidably mounted (as first disclosed in the '225 Application).

172. All claims of the Provisional Application, and all original claims filed with the '225 Application, require the presence of a safety selector mounted to pivot.

173. On April 4, 2024, ABC added new claims 15-23 to the pending '225 Application, which eventually became claims 15-23 of the '247 Patent. Like original claim 14, new claims 15-

23 allow the claimed cam to be "movably mounted" and "moveable" between a first position and a second position rather than being limited to the cam being mounted to pivot as disclosed in the Provisional Application and required by claims 1-13 of the '247 patent. Claims 15-23 thus capture the new matter added by the '225 Application that is not entitled to the priority date of the Provisional Application. The doctrine of claim differentiation emphasizes ABC's intent to capture the new matter by changing "pivotable" to "movable." Like claim 15, claim 16 includes a safety selector which is "movably mounted," and dependent claim 22, states "wherein said safety selector moves . . . by rotation," making clear that movable would encompass more (i.e., slidable).

174. All original claims 1-14 filed with the '225 Application require a safety selector adapted to be mounted to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. Claims 20-23, added on April 4, 2024, broaden the scope of that requirement by allowing the safety selector to be "movably mounted," i.e., mounted to pivot or slidably mounted.

175. Neither the Provisional Application nor the '225 Application discloses that the safety selector can be mounted in any way other than to pivot. On information and belief, Applicant nevertheless introduced the broadening "movably mounted" safety selector language into claims 20-23 nearly a year after filing the '225 Application to cover a safety selector that is slidably mounted (as disclosed by Super Safety) rather than being pivotally mounted.

176. On information and belief, Mr. Bellamy, together with Mr. DeMonico's knowledge and support, introduced the new matter described above into the '225 Application after learning of the Super Safety.

177. Neither Mr. Bellamy nor Mr. DeMonico nor anyone else involved in prosecuting the '225 Application disclosed the Super Safety to the USPTO.

178. The Super Safety is prior art to at least claims 14-23 of the ’247 patent.

179. On December 23, 2025, Mr. Bellamy filed a patent infringement complaint against Mr. Hoffman and Hoffman Tactical on behalf of ABC and RBT based on the Super Safety. *See* Hoffman Complaint.

180. The Hoffman Complaint accuses the Super Safety of infringing Claim 15 of the ’247 Patent, thereby admitting that Defendants (including Mr. Bellamy and Mr. DeMonico) believe the Super Safety, when installed and used as intended, includes all elements of at least that claim.

181. In the Hoffman Complaint, Defendants allege that the Super Safety includes all claim limitations the Examiner found missing from the cited prior art in ¶¶ 102, 106 above.

182. Defendants’ allegations in the Hoffman Complaint confirm that at least claim 15 of the ’247 patent is invalid in view of the Super Safety if the Super Safety is prior art to that claim.

183. On information and belief, Mr. Bellamy and Mr. DeMonico were aware during prosecution of the ’247 patent that the Super Safety is prior art that discloses one or more limitations that the Examiner found missing from the cited prior art in ¶¶ 102, 106 above.

184. On information and belief, Mr. Bellamy and Mr. DeMonico were aware during prosecution of the ’247 patent that the Super Safety includes a slidably mounted safety selector—i.e., new matter captured by claims 15-23 submitted on April 4, 2024.

185. On information and belief, Mr. Bellamy and Mr. DeMonico were aware during prosecution of the ’247 patent that the Super Safety is a three-position push-button safety selector.

186. Had the Examiner been aware of the Super Safety, he would have rejected at least pending claims 15-23 of the ‘225 Application under 35 U.S.C. §102 and or §103 in light of the Super Safety.

187. Had the Examiner been aware of the Super Safety, he would have rejected Defendants' effort to broaden claims 14-23, based on new matter added with or after the filing of the '225 Application, to cover slidably mounted cams and safety selectors in addition to pivotally mounted cams and safety selectors.

188. Had the Examiner been aware of the Super Safety and/or the FRT-15-3MD, he would have rejected at least pending claims 1, 4, 9, 14, 15, and 20 of the '225 Application under 35 U.S.C. §103 in light of Blakely '723 in combination with the FRT-15E3 and/or Super Safety.

189. On information and belief, Mr. Bellamy and Mr. DeMonico deliberately and intentionally withheld the Super Safety from the USPTO with the intent to deceive.

190. Based on Mr. Bellamy's and Mr. DeMonico's extensive pattern of withholding material prior art that discloses claims elements of the '247 patent that the Examiner found missing in Blakley '723, including prior art that discloses every limitation the Examiner believed was missing from Blakley '723, the single most reasonable inference is that Mr. Bellamy and Mr. DeMonico intended to and did successfully deceive the Examiner.

## JURY DEMAND

191. Atrius hereby demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Atrius requests this Court enter judgment in favor of Atrius and against Defendants as follows:

(a) Declaring that Atrius does not infringe and has not infringed, and making, using, selling, offering for sale, or importing the Selektor does not infringe and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, any claim of the Asserted Patents in violation of 35 U.S.C. § 271.

(b) Declaring that all claims of the Asserted Patents are invalid;

(c) Declaring that the ’247 patent is unenforceable due to inequitable conduct;

(d) Granting an injunction permanently restraining Defendants and each of their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all persons in active concert or participation with any them, from alleging, representing, threatening, or otherwise stating that Atrius or the Selektor or the activities of manufacturers, distributors, users, importers, or sellers in relation to the Selektor infringe any claim of the Asserted Patents and from instituting, continuing, or initiating any action or proceeding alleging infringement of any claim of the Asserted Patents against Atrius or any customers, manufacturers, users, importers, or sellers in relation to the Selektor;

(e) Declaring Atrius as the prevailing party and this case as exceptional, and awarding Atrius its reasonable attorneys’ fee, costs, and expenses pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1920, and 28 U.S.C. § 1927;

(f) Awarding such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: February 19, 2026

*/s/ Joseph D. Gray*

Joseph D. Gray (Texas Bar No. 24045970)
jgray@sgbfirm.com
Darryl Adams (Texas Bar No. 00796101)
dadams@sgbfirm.com
Tecuan Flores (Texas Bar No. 24084569)
tflores@sgbfirm.com

SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Ste. 1650
Austin, TX 78701
Tel: 512.402.3550
Fax: 512.402.6865

Adam V. Floyd (Texas Bar No. 00790699)
AFloyd@FloydIP.com

FLOYD IP
3203 Bluffs Lane
Parker, Texas 75002
Tel: (512) 497-7500

*Counsel for Plaintiff ATRIUS DEVELOPMENT GROUP CORPORATION, INC.*